UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

John Lanorith,

     Plaintiff,

-against-

Thomas Griffin,

     Defendant.

-----------------------------------X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ MAY 29, 2019 ★
BROOKLYN OFFICE

**MEMORANDUM AND ORDER**

15-CV-4878(KAM)

**MATSUMOTO, United States District Judge:**

     Petitioner John Lanorith ("petitioner") pleaded guilty to, and was sentenced for, one count of murder in the second degree. On August 18, 2015, petitioner brought the above-captioned *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of New York, challenging his conviction on one count of murder in the second degree. (*See* ECF No. 1, Petition for Writ of Habeas Corpus ("Petition"), filed August 18, 2015.)

<h3 align="center"><u>Background</u></h3>

     Petitioner's conviction and the instant habeas petition stems from the armed robbery and murder of Elgudzha Koyenishvili ("Koyenishvili"). On May 21, 2008, at approximately 8:20 p.m., petitioner entered a liquor store owned by Koyenishvili located at 118 Lincoln Avenue, Staten Island, to steal money at gunpoint. (ECF No. 6, Affirmation in Opposition to the Petition ("Grady Aff."), ¶ 5; ECF No. 6-5, Supreme Ct.

1

Decision and Order ("Decision and Order"), at 1.) Koyenishvili attempted to fend the petitioner off with a baseball bat and apparently struck petitioner in the head. Petitioner shot him three times, hitting him twice in the chest and once in the arm. (Grady Aff. ¶ 5.) Petitioner then seized the cash register and fled the store and was seen by witnesses running to a 15 to 20-year-old, "beat up," light blue pickup truck with a cracked windshield and a Harley Davidson sticker in the rear window. (Id.) Koyenishvili died an hour and a half later. (Id.)

Detective Michael Burdick ("Detective Burdick") of the 122 Precinct Detective Squad was assigned to investigate the homicide. (ECF No. 6-3, State Court Pretrial Hearing Transcript ("Pretrial Tr."), at 7.) The ensuing investigation led to the discovery of the distinctive truck petitioner had borrowed and driven to and from the robbery. Detective Burdick interviewed Witness C at approximately 9:45 p.m., who stated that at she had observed "a male white approx. 5'7"–5'10", 35-45 years of age, navy blue sweatshirt, blue jeans, black shirt on top of his head carrying a cash register running past the front of her car." (ECF No. 6-4, Police Report Dated May 27, 2008, at 4.) On May 22, 2008, Detective Burdick asked Witness A to view a photo array. Detective Burdick had prepared the photo array by selecting five photos from the computer-generated NYPD machine and coming up with the petitioner's photo through the

investigation. (Grady Aff. ¶ 12 (citing Pretrial Tr. at 8-10, 33, 70).) Detective Burdick did not recall where petitioner's photo came from, stating "there are many different avenues to get photos inside the system." (Pretrial Tr. at 31-34.) Upon viewing the array, the witness selected petitioner's photograph at position #1 and told the detective that was his neighbor, Jack. He also told the detective that he had lent his truck to Jack, who had been his friend and neighbor for approximately ten years. (*Id.* at 8-10, 70.)

Petitioner was then taken into custody that same day, May 22, 2008, outside his home, after leaving the doorway of his home on his own. (*Id.* at 46-48.) When the warrant officers arrested him, the police did not have either an arrest warrant or a felony apprehension warrant. (*Id.* at 49.)

Petitioner was taken to the precinct stationhouse to be interviewed. (*Id.* at 20-22.) In the interrogation room, when a detective attempted to introduce himself, petitioner stated, "This is crazy, I didn't kill anybody." (*Id.* at 20.) The petitioner was then asked to recall the events of the prior day—May 21, 2008. (*Id.*) During the five to ten-minute interview, the police did not mention to the petitioner the liquor store robbery or why the petitioner was there. (*Id.* at 56.) The petitioner then asked for a lawyer. (*Id.*) Later, Detective Burdick observed a "fairly large laceration on the top

of Mr. Lanorith's head" and asked the petitioner if he needed any medical attention and if he had any injuries. The petitioner motioned to the laceration and stated he had fallen off a ladder at work. (*Id.* at 23.) While petitioner was in the interview room, no officers offered to read him Miranda warnings. (*Id.* at 21, 52.)

## I. **Precinct Lineup**

Later that morning, Detective Burdick conducted a lineup at the precinct viewed by three witnesses. Petitioner and five fillers were in the lineup. Burdick selected the five fillers because "they fit the stature of [petitioner] along with facial hair, male White." (*Id.* at 11-12.) The five fillers were members of the New York City Police Department from several commands and were selected by Detective Burdick. (*Id.* at 42.) A photograph of the lineup was taken. (*Id.* at 12; *see also* ECF No. 6-2, Photograph of Lineup.) Respondent, however, conceded that petitioner was the only individual with long hair in the lineup. (Pretrial Tr. at 43.)

At 10:15 a.m. on May 22, 2008, Detective Burdick brought Witness B to the lineup viewing room and instructed Witness B to inform the detective whether anyone in the in-person lineup was recognizable. (*Id.* at 14-15.) Witness B pointed to position number two, the petitioner, and stated he recognized petitioner as the person who ran in front of his SUV

with the cash register.  At 10:26 a.m., Burdick brought Witness C to the lineup viewing room.  Because Witness C was short, all persons in the lineup stood up so that the witness could get a better view.  (*Id.* at 17.)  Detective Burdick testified that he observed as Witness C "gasped for air and then stepped back away from the viewing glass and then said number two."  (*Id.*) Witness C then stated that the petitioner, in position two, was the person he or she had seen run out of the store with the cash register.  (*Id.* at 18.)  At 10:42 a.m., Burdick brought Witness D to the lineup viewing room and asked if he recognized any persons in the lineup.  Witness D identified the individual at position number two, where petitioner was situated.  Witness D then stated that petitioner was the person he had seen place the cash register in the back of the pick-up truck.  (*Id.*)

Petitioner was charged with murder in the first degree, two counts of murder in the second degree, robbery in the first degree, two counts of criminal possession of a weapon in the second degree, tampering with physical evidence, and criminal possession of stolen property in the fifth degree. (Grady Aff. ¶ 8.)

## II.  Petitioner's *Wade/Huntley* Motion and Hearing

Petitioner moved to suppress proof of the out-of-court police-arranged identification of the defendant — specifically, identifications derived from the photo array and the precinct

lineups.  Petitioner also moved to suppress defendant's statement on the ground that it was illegally obtained.  On April 29, 2009, a *Wade/Huntley* hearing was held before the court with one witness testifying, Detective Burdick.  (*See Generally* Pretrial Tr.)

The trial judge denied petitioner's *Wade* motion in its entirety, finding that the photo array was not suggestive and that the conduct of the police was neutral. (Decision and Order at 3.)  The trial judge also examined the lineup and stated that it "[was] composed of individuals sharing similar physical characteristics and dressed in a generally similar manner. There is no characteristic or visual clue that would have oriented the viewer toward the [petitioner] as the perpetrator." (*Id.*)

The petitioner's *Huntley* motion was granted in part and denied in part.  Although the record showed no evidence that petitioner's statements were evoked by threats, coercion, or any severe deprivation of the necessities of life, petitioner was not given *Miranda* warnings. (*Id.; see also* Pretrial Tr. at 52.) Thus, petitioner's potentially incriminating statements at approximately 6:03 a.m. were suppressed. (Decision and Order at 3-4.)  Petitioner's other statements were pedigree statements and not suppressed, as "it is beyond cavil that the defendant's name, address and date of birth are pedigree statements not

subject to the requirements of *Miranda*." (*See* Decision and Order at 4.)

Jury selection was scheduled for January 14, 2010. However, on the eve of jury selection, petitioner entered into a plea agreement that was acceptable to the State.

### III. **Guilty Plea Proceeding**

At the time of the guilty plea, petitioner was represented by Manuel Ortega, Esq. ("Attorney Ortega" or "trial counsel"). On January 13, 2010, petitioner's counsel indicated that he had been authorized to withdraw the previously entered pleas of not guilty and that petitioner intended to enter a plea of guilty to murder in the second degree. (ECF No. 6-6, Transcript of Guilty Plea ("Plea Tr.") at 2-4.) The trial judge asked petitioner's counsel to "deal with" the written waiver of appeal. Petitioner and his counsel had a discussion immediately after the direction from the trial judge, which is reflected in the record. (*Id.* at 3-4.) Petitioner then signed the "Waiver of the Right to Appeal" document to acknowledge he had been advised that he was "waiving the statutory right to appeal any previously rendered decisions on motions, including suppression rulings." (ECF No. 6-7, Waiver of the Right to Appeal ("Written Waiver").) The written waiver, signed by petitioner, stated in relevant part as follows:

> The undersigned defendant hereby waives his/her right
> to appeal. The undersigned defendant has been advised
> by the Court that he/she is waiving the statutory
> right to appeal any previously rendered decisions on
> motions, including suppression rulings. The
> undersigned defendant waives the right to pursue any
> pending or possible motions and waives the right to
> bring any postjudgment motions. This waiver is
> intended to be as broad as the law allows and
> encompasses all issues arising from this criminal
> proceeding.

(*Id.*) The Written Waiver was then handed to the court.

The trial judge then asked petitioner if he understood the plea and that the sentence "would be an indeterminate one of twenty years to life imprisonment," which he would impose provided he could do so in good conscience after reviewing a presentence report. (Plea Tr. at 5-6.) Petitioner assured the court he had enough time to think about and discuss the plea with his lawyer, that he was satisfied with his lawyer's representation, that he wanted to plead guilty, that he was doing so voluntarily without the influence of alcohol or drugs, and that he was pleading guilty because he was, in fact, guilty. (*Id.* at 6-7.) Petitioner further assured the court he had not been promised anything related to his sentence other than what had been put on the record. (*Id.*)

At the plea hearing, Judge Rooney read the count of the indictment as drafted in Count 2, which charged: "[petitioner], in the Borough of Staten Island, County of Richmond, City and State of New York, on or about May 21st,

2008, with intent to cause the death of another person, caused the death of Elgudzha Koyenishvili by shooting him." (*Id.* at 8.) Judge Rooney then asked petitioner if, by his guilty plea to second degree murder, petitioner admitted those facts, and petitioner responded, "Yes." (*Id.*)

The trial judge explained to the petitioner that by pleading guilty, he was giving up certain rights such as the right to trial by judge or jury, the right to confront witnesses against him and have his lawyer cross-examine those witnesses, the right to have his guilt proved to a judge or jury's satisfaction beyond a reasonable doubt, the right to call witness or testify in his own behalf, the right to raise any defenses he might have to the charge, and the right to remain silent. (*Id.* at 8-9.) After the judge made the disclosures about the rights petitioner was forfeiting, on the record, petitioner reiterated his desire to plead guilty. (*Id.*)

The court explained that petitioner had the right to take appeal from a criminal conviction, but could choose to waive his right to take an appeal. The trial judge said he had been handed a written waiver of appeal indicating that petitioner was waiving his right to appeal from any aspect of the case, and asked petitioner if that was true. Petitioner responded, "yes." (*Id.* at 10.) The trial judge asked whether petitioner's lawyer had explained it to him, and petitioner and

Attorney Ortega indicated that Attorney Ortega had explained the waiver to petitioner. (*Id.*) Judge Rooney advised the petitioner that the waiver of appeal included the suppression ruling that had been made and if petitioner understood he was waiving his right to appeal all aspects of the case, including the suppression ruling. The trial judge further asked petitioner whether he was "knowingly, voluntarily, and intelligently waiving [his] right to take an appeal from any aspect of this case?" Petitioner replied, "yes," to both questions. (*Id.* at 10-11.) The court then asked if the petitioner had understood all the court's questions, to which he responded, "Yes." (*Id.* at 11.) The court clerk asked petitioner if he wished to withdraw his plea of not guilty and in its place plead guilty to murder in the second degree, to which petitioner responded, "Yes." (*Id.* at 12.) Judge Rooney then asked petitioner to confirm again that he was pleading guilty voluntarily and of his own free will, and the petitioner replied affirmatively. (*Id.*)

## IV. **Sentencing**

On an unspecified date during the adjournment, petitioner wrote a letter in which he expressed remorse for the fact that "a life was lost," but denied his guilt of intentional murder. He stated that he had entered the liquor store intoxicated with the intention of making a purchase, but that

when his handgun fell to the floor and he bent down to pick it up, the victim attacked him with a baseball bat. (ECF No. 6-8, Petitioner's Letter to the Sentencing Judge ("Letter") at 1.) He wrote, "I did not think[,] I only reacted and defended myself. I did not know what to do; I panicked and tried to make it look like a robbery." (*Id.*) Petitioner told the judge about his life as a law-abiding citizen and explained he had no motive to commit a robbery because he had cashed his paycheck that day. He concluded by writing, "I'm not asking for you to set me free. I'm not even asking you to reduce the 20 years[,] only to remove the [l]ife sentence." (*Id.* at 2.)

On January 25, 2010, petitioner appeared for sentencing. The judge began by addressing petitioner's letter, which had been made a part of the court file. The judge reminded petitioner and respondent that this was a negotiated plea and sentence, and both petitioner's attorney and respondent confirmed they did not seek to alter the original plea negotiations. (ECF No. 6-9, Transcript of Sentencing ("Sentencing Tr.") at 4.) The judge asked the petitioner directly whether he was moving to withdraw his plea that day based on perceived defenses, to which petitioner responded that he was not moving to withdraw his plea. (*See id.* at 10.) Petitioner affirmed that he was ready to be sentenced in accordance with the negotiated plea. (*See id.*)

Petitioner was sentenced to twenty years to life imprisonment as described in the negotiated plea deal, as Judge Rooney saw no legal reason why the negotiated sentence could not be imposed. (*Id.* at 11.) The judge also noted that he had approved and signed the waiver of appeal. (*Id.*) The trial judge recalled the case to ask petitioner again if he was satisfied with the guilty plea, because he had reread the petitioner's letter and wanted to make sure the plea was knowing and voluntary. (*Id.* at 13.) Judge Rooney indicated that the letter raised issues of self-defense and intoxication, the first of which was a defense at law and the second of which could be considered as negating a mental state, for consideration in terms of eliminating the lifetime component of the sentence. (*Id.* at 13-14.) The trial judge explained it was not legally possible to eliminate the lifetime component of the sentence, since life is the maximum term imposed on any conviction of Murder in the Second Degree. (*Id.* at 14.)

The trial judge asked whether petitioner had discussed petitioner's claim of self-defense with his lawyer, and petitioner said he had not. (*Id.* at 14-15.) An off-the-record discussion took place between petitioner and his attorney. After that discussion, petitioner said to the trial judge, "I'm not trying to take anything away from – the plea was discussed and we agreed to it and that's not going to change. All it

was[,] was I wanted to let you know this is what happened and I felt that the only offer I was given was twenty to life and to me that's excessive." (*Id.* at 15.) Regarding the possible justification defense, petitioner acknowledged he was not trying to "bring in a defense in any way, shape[,] or form." (*Id.*) The trial judge asked petitioner if he still wanted to waive the right to present any defenses; petitioner assured him he did and waived any self-defense or intoxication defense. (*Id.* at 16.) Finally, the trial judge asked the petitioner if he was still satisfied with his lawyer's representation, to which he responded "yes." (*Id.* at 19.) Accordingly, and with the consent of both parties, the trial judge ruled "the plea and sentence stand." (*Id.* at 19-20.)

## V. Direct Appeal

Petitioner timely filed his notice of appeal, and on August 24, 2010, the Appellate Division, Second Department granted petitioner leave to appeal as a poor person and assigned Steven Banks, Esq. ("Attorney Banks" or "appellate counsel") as counsel on appeal. (ECF No. 6-10, Direct Appeal: Brief for Defendant-Appellant at 2.)

In his brief, petitioner argued that (1) respondent failed to meet its burden of production with sufficient evidence at the *Wade* hearing to show a lack of suggestiveness, when the record established that the procedure was unduly suggestive, and

13

(2) the 20-year to life sentence was excessive in light of appellant's background, age, and the circumstances of the offense. (*Id.* at 16, 27.) In his brief, petitioner pointed to the letter he had submitted to the Court which he argued showed a lack of intent to commit the crime. (*Id.* at 15)

Respondent responded, arguing that petitioner's conviction and sentence should be affirmed as petitioner's knowing and intelligent waiver of his right to appeal barred his appeal claims. (ECF No. 6-11, Direct Appeal: Brief for Respondent.) First, defendant's oral waiver was ratified by the detailed written waiver he executed. (*Id.* at 17, 20.) Second, even if he had not waived his right to appeal, the conviction and sentence should be affirmed because (1) the People had met their burden of production at the *Wade* hearing and (2) Defendant's sentence was at the middle of the sentencing guideline range and was not excessive. (*Id.* at 23, 37.)

On July 18, 2012, the Appellate Division, Second Department, affirmed the judgment, stating that petitioner's "knowing, voluntary, and intelligent waiver of his right to appeal forecloses appellate review of that branch of his omnibus motion which was to suppress certain identification testimony, and his contention that his sentence was excessive." (ECF No. 6-12, Direct Appeal: Decision and Order, July 18, 2012.)

## VI. Motion for Vacatur Pursuant to C.P.L. § 440.10

Petitioner then moved to vacate the judgment under Criminal Procedure Law § 440.10(1)(h) on the grounds that the judgment was obtained in violation of petitioner's right to effective assistance of counsel. The motion alleged that defense counsel: (1) failed to provide meaningful representation in petitioner's prosecution; (2) failed to inform petitioner of the weight that lack of intent carried; (3) failed to object to the two-minute window imposed by the court to investigate the petitioner's factual recitation in his letter to the court; and (4) failed to meaningfully represent petitioner in relation to a bench conference regarding the "completely changed legal landscape of the previously agreed to plea." (ECF No. 6-13, CPL § 440.10 Motion at 1-2.)

On June 5, 2013, the appellate court denied petitioner's motion to vacate the judgment on the grounds that petitioner's direct appeal did not raise ineffective assistance of counsel as an issue despite the fact that "sufficient facts appear[ed] on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion." C.P.L. § 440.10(2)(c). Petitioner's motion rested upon the letter he wrote and handed to the court at sentencing, which was discussed extensively at sentencing, and appellate counsel

15

specifically discussed his client's letter in his brief on direct appeal. (ECF No. 6-16, CPL 440.10 Decision and Order, June 5, 2013.) The court held that C.P.L § 440.10 cannot be used as a substitute for an appeal and denied petitioner's motion under C.P.L § 440.10(2)(c). (*Id.*)

## VII. Application for a Writ of Error Coram Nobis

Petitioner then petitioned the Appellate Division, Second Department for a writ of error coram nobis to vacate his conviction, alleging that he was deprived of his Constitutional rights under the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution and Article 1, Section 6 of the New York Constitution to effective assistance of counsel upon petitioner's direct appeal. (ECF No. 6-17, Application for Coram Nobis at 8.) Specifically, petitioner argued that "the assistance of appellate counsel did not reach a level of performance sufficient to satisfy an objective standard of reasonableness, and there [was] a 'reasonable probability' that but for counsel's deficient performance, the outcome of Movant's direct appeal would have been different." (*Id.* at 8-9.) Particularly, petitioner alleged that appellate counsel had failed to object to the "fatally flawed plea," failed to investigate the "completely changed legal landscape of the previous agreed to plea vis-à-vis Movant's letter to the court," and failed to "recognize the mirroring constitutional violations

16

of the trial [c]ourt and its role in the fatally flawed plea."
(*Id.* at 17-18.)

On December 24, 2014, petitioner's application for a
writ of error coram nobis was denied, as petitioner had failed
to establish that he was denied the effective assistance of
appellate counsel. (ECF No. 6-20, Coram Nobis Decision and
Order, December 24, 2012.)

## Legal Standard

Pursuant to 28 U.S.C. § 2254, "a district court shall
entertain an application for a writ of habeas corpus in behalf
of a person in custody pursuant to the judgment of a State court
only on the ground that he is in custody in violation of the
Constitution or laws or treaties of the United States." 28
U.S.C. § 2254(a). The application shall not be granted to any
claim adjudicated on the merits in State court proceedings
unless the adjudication of the claim "resulted in a decision
that was contrary to, or involved an unreasonable application
of, clearly established Federal law, as determined by the
Supreme Court of the United States" or "resulted in a decision
that was based on an unreasonable determination of the facts in
light of the evidence presented in the State court proceeding."
28 U.S.C. § 2254(d).

## Discussion

On August 18, 2015, petitioner, acting *pro se*, timely filed the instant petition for a writ of habeas corpus to vacate and set aside his conviction for murder in the second degree pursuant to a violation of P.L. § 125.25(1). (Petition at 1.) Petitioner argued that a writ is warranted because the identification lineup was unduly suggestive and because trial and appellate counsel were ineffective. (ECF No. 10, Petitioner's Reply Memorandum at 2.) Respondent argued that petitioner's claims are procedurally barred because (1) the Appellate Division's rejection of the unduly suggestive lineup claim on the grounds of petitioner's appeal waiver and (2) the court's denial of petitioner's motion to vacate the judgment as petitioner failed to raise ineffective assistance of counsel on direct appeal are independent and adequate state grounds barring federal review.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under AEDPA, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* This is an exacting standard.

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

Under the "unreasonable application" standard set forth in *Williams*, "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v.*

*O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams,* 529 U.S. at 411). The AEDPA standard is a highly deferential standard of review, "requiring courts to assess whether the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Garner v. Lee*, 908 F.3d 845, 861 n. 14 (2d Cir. 2018), *cert. denied*, No. 18-8348, 2019 WL 1104003 (U.S. Apr. 22, 2019)(citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Additionally, subsection (e) of § 2254 requires that a federal habeas court presume all state court factual determinations to be correct. The petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

In reviewing the petition, the court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Accordingly, the court is obliged to interpret petitioner's pleadings as raising the strongest arguments they suggest. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

## A. Petitioner's Suggestive Identification Claim

Petitioner's claim that the precinct lineup was unduly suggestive fails, as the state appellate court's determination on independent and adequate state law grounds bars review. "[I]t is a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts." *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977). In *Harris v. Reed*, the Supreme Court held that a court shall not consider an issue of federal law on direct review of a state court judgment in federal habeas corpus proceedings pursuant to 28 U.S.C. § 2254 if that judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the court's decision. *Harris v. Reed*, 489 U.S. 255, 261-62 (1989).

In the instant habeas petition, petitioner raised the same suggestive lineup claim that was raised and rejected on direct review. He asserted that respondent failed to meet its burden of production with sufficient evidence at the *Wade* hearing to show a lack of suggestiveness. Petitioner argued that the photograph of the lineup established its suggestiveness because petitioner was the only participant with long hair, wearing a tan-colored jacket, and bearing a tattoo on his neck. (*See* ECF No. 6-10, Direct Appeal: Brief for Defendant-Appellant at 2.) The Appellate Division rejected petitioner's claim

without reaching the claim's merits because the petitioner's knowing and intelligent waiver of his right to appeal barred appellate review of the issue under New York common law. (ECF No. 6-12, Direct Appeal: Decision and Order, July 18, 2012 (citing *People v. Lopez*, 6 N.Y.3d 248, 256-57 (2006); *People v. Kemp*, 94 N.Y.2d 831, 833 (1999)).) Accordingly, petitioner's claim with respect to the suggestiveness of the police lineup was decided on independent and adequate state law grounds, and the district court is barred from reviewing it in the instant habeas action.

Even if the court considers petitioner's suggestive lineup claim in conjunction with his ineffective assistance of appellate counsel claim, his claim is still barred from review. In *Jones v. Senkowski*, a petitioner who failed to assert his suggestive identification claim on direct appeal argued "a claim of ineffective assistance of appellate counsel may still serve as a vehicle for consideration of the merits of his suggestive identification claim in state court, where the claim of ineffectiveness is premised on appellate counsel's *omission* of the suggestive identification claim." *See Jones v. Senkowski*, 42 F. App'x 485, 487 (2d Cir. 2002). The court rejected this argument, holding that "a claim of ineffective assistance of appellate counsel is 'distinct' from the claim whose omission indicates such ineffectiveness," and finding that petitioner

could not establish "cause" for the procedural default of his suggestive identification claim on the basis of ineffective assistance of appellate counsel. *Id.* at 487-488 (citing *Turner v. Artuz,* 262 F.3d 118, 123 (2d Cir.), *cert. denied,* 534 U.S. 1031 (2001)).

Further, the claim fails on the merits. The trial judge's denial of petitioner's *Wade* motion and finding that the photo array was not suggestive are treated deferentially under AEDPA. Because the state court's finding was neither contrary to nor involved an unreasonable application of clearly established Federal law and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, 28 U.S.C. § 2254, this court may not grant habeas relief. *Williams,* 529 U.S. 362.

The Supreme Court has set forth a two-step inquiry for evaluating the constitutional permissibility of in-court identification testimony based on out-of-court identification procedures, "requir[ing] a determination of whether the identification process was impermissibly suggestive and, if so, whether it was so suggestive as to raise 'a very substantial likelihood of irreparable misidentification.'" *Jackson v. Fogg,* 589 F.2d 108, 111 (2d Cir. 1978) (citing *Neil v. Biggers,* 409 U.S. 188, 198 (1973)). A lineup is unduly suggestive as to a specific defendant if he meets the description of the

perpetrator previously given by the witness and the other lineup participants obviously do not. *Raheem v. Kelly*, 257 F.3d 122, 134 (2d Cir. 2001). If pretrial procedures have been unduly suggestive, a court may nonetheless admit in-court identification testimony if the court determines it to be "independently reliable." *United States v. Wong*, 40 F.3d 1347, 1359 (2d Cir. 1994). In *Manson v. Brathwaite*, the Supreme Court explained that "reliability is the linchpin in determining the admissibility of identification testimony," and held that the factors to be considered in determining reliability include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Id.*

In the instant case, it was reasonable for the *Wade* hearing court to find that the precinct lineup had not been improperly suggestive. Each of the three witnesses who identified petitioner from the precinct lineup had an unobstructed view of the petitioner at the time of the incident. Witness C's description of the perpetrator, which was given

approximately one and a half hours after the crime on May 21, 2008, described the suspect as a white male, approximately 30-45 years of age, wearing a navy-blue sweatshirt, blue jeans, and a black shirt on top of his head. Though petitioner argues that the lineup was unduly suggestive because he was the only participant with longer hair, wearing a tan-colored jacket, and bearing a tattoo on his neck, none of those differences match the description previously given by Witness C. None of the differences at issue created "a very substantial likelihood of irreparable misidentification." *Jackson*, 589 F.2d at 111. Witness C, and Witnesses B and D then proceeded to identify petitioner in a lineup on May 22, 2008 without any noted hesitation. (Pretrial Tr. at 14-18.)

Thus, because the claim was decided on independent and adequate state law grounds on direct review, and because the *Wade* hearing court's finding was not contrary to and did not unreasonably apply clearly established Federal law based on an unreasonable determination of the facts, habeas relief on this ground must be denied. (*See* Decision and Order at 1-3.)

### B. Petitioner's Claim of Invalid Waiver and Ineffective Assistance of Trial Counsel Claims

Petitioner also argues that his waiver of his right to appeal is unenforceable due to trial counsel's ineffectiveness in advising petitioner to accept the plea. He argues that trial

counsel was ineffective in failing to investigate facts supporting potential defenses, and that appellate counsel was ineffective in failing to challenge petitioner's guilty plea. Respondent principally argues that C.P.L. §440.10(2)(c)'s procedural bar constitutes an adequate and independent state ground barring review in federal court. *Aparicio v. Artuz*, 269 F.3d 78, 92-93 (2d Cir. 2001).

Where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Under the cause and prejudice test, cause "must be something *external* to the petitioner, something that cannot be fairly attributed to him." *Id.* at 753 (emphasis in original). Furthermore, "attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation." *Id.*

Petitioner fails to overcome this procedural bar by showing cause and prejudice or that a fundamental miscarriage of justice would result from this court's failure to review the

claim on its merits.  As explained before, petitioner's invalid

waiver and ineffective assistance of trial counsel claims are

plainly meritless.  *See Acosta v. Artuz*, 575 F.3d 177, 188 (2d

Cir. 2009) (holding that the petitioner could not make a

sufficient showing to overcome procedural bar where the "claim

is lacking merit in any event") (citing *Gittens v. Menifee*, 428

F.3d 382, 387 (2d Cir. 2005)).

### 1. **Petitioner's Invalid Waiver Claim**

Petitioner's invalid waiver claim is meritless.  The

record demonstrates that petitioner's waiver was knowing and

voluntary.  *See Okupe v. U.S.*, No. 08-CV-693, 2009 WL 455289, at

*2 (E.D.N.Y. Feb. 23, 2009) (finding knowing and voluntary

waiver where the plea agreement was signed, there was record

evidence that petitioner discussed the waiver with his attorney,

and petitioner stated at the plea proceeding that he had read

and understood the plea agreement); *see also Garcia-Santos v.*

*United States*, 273 F.3d 506, 509 (2d Cir. 2001) (holding that a

waiver of appeal in a plea agreement was valid where defendant

signed the plea agreement and stated to the magistrate judge

that he had read and understood the plea agreement, and did not

assert that he misunderstood the waiver).

The trial judge in the instant case took even more

extensive steps to ensure petitioner understood the rights he

waived.  Petitioner signed the written waiver to acknowledge he

had been advised that he was "waiving the statutory right to appeal any previously rendered decisions on motions, including suppression rulings." (*See generally* Written Waiver.) The trial judge inquired specifically whether petitioner understood that he was agreeing to waive his right to appeal from any aspect of the case in the written waiver that he signed and petitioner indicated that he did. (Plea Tr. at 10.) The trial judge also inquired whether petitioner's lawyer had explained the waiver to him, and petitioner said his attorney had done so. (*Id.*) At the sentencing proceeding, the trial judge recalled the case to ask the petitioner again if he was satisfied with the guilty plea. (Sentencing Tr. at 13.) Finally, petitioner specifically informed the trial judge he was not trying to change the plea and still wanted to waive the right to present any defenses. (*Id.* at 15-16.) Accordingly, there is ample evidence in the record that petitioner's waiver was knowing and voluntary. Because the invalid waiver claim is meritless, petitioner cannot overcome the procedural default bar.

## 2. Ineffective Assistance of Trial Counsel

In challenging the ineffectiveness of counsel in connection with a plea agreement a defendant is challenging "the constitutionality of the *process* by which he waived [his right to appeal]." *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001). A habeas petitioner's claim of ineffective counsel

may survive an appeal waiver if, by focusing on the advice petitioner received from his attorney, it connects the alleged ineffectiveness of petitioner's trial counsel with the voluntary nature of his plea. *See Parisi v. United States*, 529 F.3d 134, 139 (2d Cir. 2008). However, as the Second Circuit stated in the context of a § 2255 case:

> [W]e reject the notion that an appeal waiver becomes unenforceable simply because a defendant "claims" ineffective assistance of counsel. The appeal waiver would be unenforceable if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious. But if the record on appeal shows that that claim lacks merit, the appeal should be dismissed because the waiver should be enforced. Similarly, if the merits of the ineffective-assistance-of-counsel claim cannot be determined on the basis of the record on appeal, it is appropriate to enforce the appeal waiver and dismiss the appeal. If the rule were otherwise, a defendant who secured the benefits of a plea agreement by, *inter alia*, knowingly and voluntarily waiving the right to appeal could escape the fairly bargained-for appeal waiver by the simple expedient of asserting an ineffective-assistance-of-counsel claim that had no merit.

*United States v. Monzon*, 359 F.3d 110, 118-19 (2d Cir. 2004) (citation omitted). The same reasoning is applied here.

Further, even if this court determines that the appeal waiver was unenforceable, petitioner's ineffective assistance of trial counsel claim fails on the merits. A court reviewing a claim for ineffective assistance of counsel on a writ of habeas corpus evaluates the two-part test delineated in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective

assistance of counsel claim, a petitioner must demonstrate: (1) that his counsel's performance was so deficient that it was objectively unreasonable under professional standards prevailing at the time; and (2) that his counsel's deficient performance was prejudicial to the petitioner's case. *Id.* at 687.

With respect to whether counsel's performance was deficient, the court examines the reasonableness of counsel's actions, keeping in mind that "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). In assessing performance, the court should attempt to "eliminate the distorting effects of hindsight," and apply deference to counsel's judgments. *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)).

To establish prejudice due to counsel's deficient performance in the context of a plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In *Hill v. Lockhart*, the court found that petitioner's allegations were insufficient to satisfy the "prejudice

requirement" because he did not allege in his petition that had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. Nor did he allege any special circumstances that could support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether to plead guilty.

Where a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). As explained in *Tollet v. Henderson*, 411 U.S. 258 (1973), a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Id.* at 267.

In conducting the *Strickland* inquiry, the representations of the petitioner, trial counsel, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral consequences." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Therefore, "absent a substantial reason to find otherwise," a district court does not "abuse its discretion in discrediting later self-serving and

contradictory testimony as to whether the plea was knowingly and intelligently made." *United States v. Rivernider*, 828 F.3d 91, 105 (2d Cir. 2016) (citation and internal quotation marks omitted).

Petitioner first claims that trial counsel failed to investigate facts supporting defenses of potential intoxication or self-defense after petitioner's letter was submitted at the sentencing proceeding. As the Supreme Court stated in *Hill v. Lockhart*, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. *Hill*, 474 U.S. at 59. *Strickland* requires the court to indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and therefore presume that petitioner's counsel reviewed in full the evidence and decided that it did not support a successful self-defense or intoxication defense. *Strickland*, 466 U.S. at 689.

Counsel's strategic decision to forego a self-defense or intoxication defense and recommend that the petitioner plead guilty was reasonable. Petitioner's defense of self-defense likely would not have succeeded at trial, given the eyewitness

testimony and other evidence adduced at trial. Petitioner assured the court that his guilty plea was voluntary and of his free will, and then admitted to the fact that he had intentionally killed the victim. (Sentencing Tr. at 18.) The petitioner's potential intoxication defense was also weak. In New York, "intoxication is not, as such, a defense to a criminal charge," but it may be admitted to negate an element of the offense. N.Y. Penal L. § 15.25. Since the elements of felony murder in New York are that "the victim was killed while the defendant was in the course of committing or attempting to commit and in furtherance of [a] robbery," *id.* § 125.27(1)(a)(vii), intoxication likely would not be sufficient to negate *mens rea*. Trial counsel's strategy to forego these defenses was reasonable, and thus the petitioner has failed to establish "prejudice" under *Strickland* on this ineffective assistance of counsel claim.

Petitioner further contends that he did not knowingly, intelligently and voluntarily plead guilty because his counsel gave him bad advice in accepting the prosecutor's plea offer. He alleges that he did not receive real notice of the true nature of the charge against him. He also claims that counsel failed to fully explain the implications of the petitioner's letter to the court, while advising the petitioner to take the plea. As the Supreme Court stated in *Hill v. Lockhart*, the test

for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56. The record of the sentencing proceeding reflects that the court suggested to the petitioner that he might have a viable self-defense or intoxication defense and provided him time to have an off-the-record discussion with his attorney about proceeding with the guilty plea. After this discussion, the petitioner stated that he wished to waive any self-defense or intoxication defenses and that he was pleading guilty voluntarily and of his own free will. (Sentencing Tr. at 14-18.) The trial judge explained to the petitioner that the sentence of 20 years to life was a plea bargain because first-degree murder "carried something more." (*Id.* at 17.) Further, the petitioner affirmed that he was satisfied with his lawyer's representation of him. (*Id.* at 19.)

Petitioner's decision to accept the plea offer of 20 years to life was a voluntary and intelligent choice among the alternative courses of action open to him. Because petitioner has not asserted facts supporting his claim that his counsel was constitutionally ineffective in supporting his decision to plead guilty, the Appellate Division's decision to reject his ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of federal law.

Because petitioner's invalid waiver and ineffective assistance of trial counsel claims are meritless, he fails to overcome the "adequate and independent state ground" procedural bar and his claims are denied.

### C. Petitioner's Ineffective Assistance of Appellate Counsel Claim

Petitioner also claims that "appellate counsel failed to recognize the constitutionally deficient plea and colloquy at sentencing." (Petition at 13.) He argues that although appellate counsel did a "nominal" job, he failed "to recognize and assert the fact that Petitioner's allocution sentencing was fatally flawed and could not stand as a matter of both fact and law" and that appellate counsel's ineffective assistance "created the procedural default." (Reply Mem. at 23-24.) He raised this claim in his petition for a writ of error coram nobis, and the Appellate Division denied the petition. (Coram Nobis Decision and Order, December 24, 2012.)

The *Strickland* test applies to appellate as well as to trial counsel; a petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance there was a reasonable probability that defendant's appeal would have been successful. *See, e.g.*, *Mayo v. Henderson*, 13 F.3d 528, 533

(2d Cir. 1994). Appellate counsel is not required to raise every colorable claim urged by the client, but is entitled to focus on key issues while "winnowing out weaker arguments." *See e.g., Jones v. Barnes*, 463 U.S. 745, 751-53 (1983). Reviewing courts should not second guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *Id.* at 754. A habeas petitioner may establish constitutionally inadequate performance of appellate counsel only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533.

In the instant case, appellate counsel asserted that the purported waiver of the right to appeal was not knowing, intelligent, or voluntary to support the argument that petitioner's plea should be vacated and that the lineup identifications should be suppressed. (Direct Appeal: Brief for Defendant-Appellant at 23-27.) Appellate counsel's decision not to challenge petitioner's guilty plea with regards to trial counsel's advice in accepting the plea was a reasonable strategic decision in light of the record. Trial counsel discussed the plea with petitioner after petitioner raised self-defense in his letter, and petitioner told the judge he was "not trying to bring in a defense in any way, shape or form." (Sentencing Tr. at 14-15.) Petitioner assured the court that

his guilty plea was voluntary and of his own free will, and based on the fact that he had intended to kill the victim. (*Id.* at 16–18.) Appellate counsel's strategic decision to forego the weaker argument of ineffective assistance of trial counsel was objectively reasonable.

Applying the deference to appellate counsel's strategy, as required by *Strickland*, the conduct of petitioner's appellate counsel was objectively reasonable, and the ineffective assistance of appellate counsel claim fails on the merits.

## Conclusion

Based on the foregoing, petitioner's petition for a writ of habeas corpus is denied in its entirety. Petitioner's claim of suggestive identification procedures and claims of ineffective assistance of trial and appellate counsel are procedurally barred. Petitioner's claim with respect to the suggestiveness of the police lineup is procedurally barred on independent and adequate state law grounds and also fails on the merits. Additionally, petitioner's claims of invalid waiver and ineffective assistance of trial counsel are procedurally barred on adequate and independent state law grounds because the state court had denied petitioner's ineffective assistance of counsel claims in deciding the C.P.L. § 440.10 motion on procedural grounds. Petitioner cannot show cause or prejudice to overcome

this procedural bar because his invalid waiver and ineffective assistance of trial counsel claims are meritless; the record demonstrates that petitioner's waiver was knowing and voluntary, and counsel's performance was neither unreasonable nor prejudicial. Finally, petitioner's claim of ineffective assistance of appellate counsel also fails on the merits.

Accordingly, the petition for a writ of habeas corpus is denied and dismissed. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should not be issued. The Clerk of Court is respectfully directed to enter judgment in favor of respondent, close the case, and serve a copy of this order and the judgment on *pro se* petitioner.

**SO ORDERED.**

Dated:    May 24, 2019
          Brooklyn, New York

                                    /s/ USDJ KIYO A. MATSUMOTO
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge